No. 23-1958

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## ERIE INSURANCE EXCHANGE, *et al.*,

*Plaintiff-Appellants*,

v.

## THE MARYLAND INSURANCE ADMINISTRATION, *et al.*,

*Defendant-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(Julie R. Rubin, District Judge)

_____

## BRIEF OF APPELLEES

_____

ANTHONY G. BROWN
Attorney General of Maryland

J. VAN LEAR DORSEY
BETTY S. DIENER
Assistant Attorneys General
200 Saint Paul Place
27th Floor
Baltimore, Maryland  21202
van.dorsey@maryland.gov
(410) 468-2023
(410) 468-2086 (facsimile)

November 28, 2023          Attorneys for Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1958__       Caption: __Erie Insurance Exchange v. The Maryland Insurance Administration__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The Maryland Insurance Administration; Kathleen A. Birrane__
(name of party/amicus)

_____

who is _____ appellees _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☐YES ☑NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: _Betty Sue Orener_ _____     Date: _____09/20/2023_____

Counsel for: Appellees _____

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................2

STATEMENT OF THE CASE ..............................................................2

    The Statutory and Regulatory Scheme .........................................3

    The Underlying Investigation and Determination Letters ..............5

    Appellants' Parallel Federal Lawsuit ...........................................7

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT ....................................................................................12

I.    THE COURT REVIEWS THE DISTRICT COURT'S ABSTENTION DETERMINATIONS AND DECISION NOT TO HOLD A HEARING FOR ABUSE OF DISCRETION. ..............................................................12

II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ABSTAINING BASED ON *YOUNGER* AND CONSEQUENTLY DENYING THE MOTION FOR INJUNCTIVE RELIEF. .......................................................................12

    A.    The District Court Did Not Abuse Its Discretion in Determining That Appellants Will Have an Adequate Opportunity to Raise Their Federal Claims in the Ongoing State Proceedings. ..................15

        1.    The Administration's proceedings will allow Appellants to object to evidence and raise their federal claims. .....................15

        2.    Providing documents to the hearing officer does not make the Administration's proceedings inadequate ...........................17

    B.    The District Court Did Not Abuse Its Discretion in Finding That the "Extraordinary Circumstances" Exception to *Younger* Does Not Apply Here. ................................................................22

    C.    The District Court Did Not Abuse Its Discretion in Declining to Find That Any Other Exception Applied. ...........................................26

III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ABSTAINING BASED ON THE *BURFORD* DOCTRINE. ...........................................................28

IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE COMPLAINT AND DENYING THE MOTION FOR INJUNCTIVE RELIEF WITHOUT HOLDING A HEARING. ....................................................................31

CONCLUSION ........................................................................................32

REQUEST FOR ORAL ARGUMENT ....................................................34

CERTIFICATE OF COMPLIANCE ........................................................34

TEXT OF PERTINENT PROVISIONS ...................................................35

# TABLE OF AUTHORITIES

Page

## Cases

*Air Evac EMS, Inc. v. McVey,* 37 F. 4th 89 (4th Cir. 2022) ............. 12, 23, 24

*Arthur v. Ticor Title Ins. Co.,* 569 F. 3d 154 (4th Cir. 2009) ...................... 19

*Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) ................................................. 8

*Carter v. Huntington Title & Escrow, LLC,* 420 Md. 605 (2011) ........... 19-20

*Charleston Area Med. Ctr., Inc. v. Blue Cross & Blue Shield Mut. Ins.* 6 F.3d 243 (4th Cir. 1993) ........................................................ 14

*Chinwuba v. Larsen,* 142 Md. App. 327 (2002) ........................................... 22

*Consumer Prot. Div., Office of the Attorney Gen. v. Consumer Publ'g Co., Inc.,* 304 Md. 731 (1985).................................................... 25

*CVLR Performance Horses, Inc. v. Wynne,* 792 F. 3d 469 (4th Cir. 2015)................................................................................... 31-32

*Division of Labor & Industry v. Triangle Gen. Contrs., Inc.,* 366 Md. 407 (2001) .................................................................... 30

*Fuller v. Bartlett,* 894 F. Supp. 874 (D. Md. 1995)................................ 14, 16

*Gibson v. Berryhill,* 411 U.S. 564 (1973) .................................................... 25

*Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975) ............................................ 17

*Insurance Comm'r v. Equitable Life Assurance Soc. of the U.S.,* 339 Md. 596 (1995) ................................................................. 16

*Jews v. Tyler,* Civil No. L-08-2075, 2009 WL 5206480 (D. Md. Jan. 16, 2009) ............................................................. 16

*Kaplan v. CareFirst,* 614 F Supp. 2d 587 (D. Md. 2009) ........................... 16

*Kitlinski v. United States Dep't of Justice*, 994 F.3d 224
  (4th Cir. 2021) .................................................................. 12, 31

*Larsen v. Cigna Healthcare Mid-Atlantic, Inc.*, 224 F. Supp. 2d 998
  (D. Md. 2002)........................................................................ 16

*Lussier v. Md. Racing Comm'n*, 343 Md. 681 (1996) ................................. 30

*Marcello v. Bonds*, 349 U.S. 302 (1955) ........................................ 25

*Martin Marietta Corp. v. Maryland Comm'n on Human Relations*,
  38 F. 3d 1392 (4th Cir. 1994) .................................................. 13

*Middlesex County Ethics Committee v. Garden State Ass'n*,
  457 U.S. 423 (1982)............................................................. 13

*Miller v. Comptroller of Md.*, 398 Md. 272 (2007) ..................................... 30

*Moore v. City of Asheville*, 396 F. 3d 3285 (4th Cir. 2005) ........................ 13

*Nagy v. Baltimore Life Ins. Co.,* 49 F. Supp. 2d 822 (D. Md. 1999)............ 22

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989)............................................................. 29

*Ohio Civ. Rts. Comm'n v. Dayton,*, 477 U.S. 619 (1986)............................ 13

*Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 16 (1987) ............................................ 15

*Richmond, Fredericksburg, Potomac R.R. Co. v. Forst,* 4 F.3d 244
  (4th Cir. 1993)................................................................... 19

*Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir. 1976) .............................. 25

*SEC v. Variable Annuity Life Ins. Co. of Am.*, 359 U.S. 65 (1959).............. 14

*Shaughnessy v. United States*, 349 U.S. 280 (1955)...................................... 25

*Schwartz v. Dep't of Nat. Res.*, 385 Md. 534, 554 (2005)............................. 30

*United Ins. Co. of America v. Maryland Ins. Admin.,* 450 Md. 1 (2016)..... 16

*Withrow v. Larkin*, 421 U.S. 35 (1975) ....................................................... 25

*Younger v. Harris*, 401 U.S. 37 (1971)................................................... 8, 12

**Statutes**

McCarran-Ferguson Act, 15 U.S.C. § 1011 ................................................. 14

2007 Md. Laws ch. 110................................................................................ 22

Md. Code Ann., Ins. § 2-101 (LexisNexis 2017) ......................................... 3

Md. Code Ann., Ins. § 2-103 (LexisNexis 2017) ......................................... 3

Md. Code Ann., Ins. § 2-108 (LexisNexis 2017) ......................................... 3

Md. Code Ann., Ins. § 2-201 (LexisNexis 2017) ......................................... 3

Md. Code Ann., Ins. § 2-204 (LexisNexis 2017) .................................... 3, 22

Md. Code Ann., Ins. § 2-205 (LexisNexis 2017) ......................................... 5

Md. Code Ann., Ins. § 2-207 (LexisNexis 2017) ......................................... 5

Md. Code Ann., Ins. § 2-209 (LexisNexis 2017) ............................. 5, 20, 21

Md. Code Ann., Ins. § 2-210 (LexisNexis 2017) ...................................... 3, 4

Md. Code Ann., Ins. § 2-212(a) (LexisNexis 2017)...................................... 3

Md. Code Ann., Ins. § 2-213 (LexisNexis 2017) ....................................... 15

Md. Code Ann., Ins. § 2-215 (LexisNexis 2017) ..................................... 4, 17

Md. Code Ann., Ins. § 27-503 (LexisNexis 2017) .................................... 5, 6

Md. Code Ann., State Gov't § 10-213 (LexisNexis 2021)........... 4, 15, 18, 19

Md. Code Ann., State Gov't §10-219(a) (LexisNexis 2021) ................... 4, 26

## Regulations

COMAR 31.02.01.02B(4) ................................................................................. 3

COMAR 31.02.01.03 ...................................................................................... 3

COMAR 31.02.01.05-1 .............................................................................. 4, 15

COMAR 31.02.01.07D .............................................................................. 4, 16

## Rules

Fed. R. Civ. P. 78(b) ...................................................................................... 31

D. Md. Local R. 105.6 ................................................................................... 31

Md. Rule 2-403 ............................................................................................... 4

Md. Rule 16-904 ........................................................................................... 16

Md. Rule 16-934 (b) .............................................................................. 4, 16, 20

Md. Rule 20-201.1(d) ..................................................................................... 4

No. 23-1958

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**ERIE INSURANCE EXCHANGE, *et al.,***

*Plaintiff-Appellants*,

v.

**THE MARYLAND INSURANCE ADMINISTRATION, *et al*.,**

*Defendant-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(Julie R. Rubin, District Judge)

_____

**BRIEF OF APPELLEES**

_____

**JURISDICTIONAL STATEMENT**

The district court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367 but, as explained below, properly declined to exercise that jurisdiction pursuant to the *Younger* and *Burford* abstention doctrines. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.     Did the district court permissibly exercise its discretion when it dismissed the complaint based on the *Younger* abstention doctrine, where ongoing state administrative proceedings will provide Appellants with ample opportunity to raise their claims regarding whether those proceedings violate federal law?

2.     Did the district court permissibly exercise its discretion when it dismissed the complaint based on the *Burford* abstention doctrine, where resolution of the underlying issues by a federal court could have effects well beyond this case and could disrupt efforts to implement a coherent state policy regarding the regulation of insurance?

3.     Did the district court permissibly exercise its discretion in declining to hold an oral hearing before dismissing the case on abstention grounds and consequently denying Appellants' motion for injunctive relief?

## STATEMENT OF THE CASE

This appeal involves Appellants' attempt to collaterally attack a state administrative investigation and related proceeding.  Appellants received four administrative determination letters from the Maryland Insurance Administration ("the Administration"), which found violations of Maryland insurance law. Appellants sought administrative hearings, as Maryland law permits.  Just after

doing so, however, they filed this lawsuit against the Administration and Insurance Commissioner Kathleen A. Birrane ("the Commissioner") in the United States District Court for the District of Maryland. (JA5-45.) The district court ultimately dismissed the suit pursuant to the *Younger* and *Burford* abstention doctrines, and this appeal followed.

**The Statutory and Regulatory Scheme**

The Commissioner is the head of the Maryland Insurance Administration. *See* Md. Code Ann., Ins. §§ 2-101, 2-103, 2-108 (LexisNexis 2017). She is responsible for enforcing the provisions of the Insurance Article and may conduct examinations, investigations, and hearings as necessary to fulfill the purpose of the Article. *Id.* § 2-108.

In furtherance of her duties, the Commissioner is authorized to issue administrative orders. *Id.* §§ 2-201, 2-204. A person aggrieved by any act of the Commissioner, including the issuance of an order or a determination as to whether the target of an administrative complaint acted unlawfully, may file a demand for hearing. *Id.* § 2-210(a)(2)(ii); COMAR 31.02.01.02B(4); COMAR 31.02.01.03. If received by the Administration within 10 days after an order is served, such a demand stays the Commissioner's order pending the hearing. Ins. § 2-212(a).

The Commissioner may delegate the responsibility for holding a hearing to certain Administration personnel. *Id.* § 2-210(d). In such a hearing, as is common

in state and federal administrative hearings alike, the hearing officer serves as a neutral arbiter of the dispute between the aggrieved party and the agency's enforcement arm. *See* Md. Code Ann., State Gov't § 10-219 (a) (LexisNexis 2021). Parties to a contested case hearing at the Administration are entitled to engage in discovery. COMAR 31.02.01.05-1. Hearings are conducted consistent with Maryland's Administrative Procedure Act. Ins. § 2-210(c). The hearing officer may "admit probative evidence that reasonable and prudent individuals commonly accept in the conduct of their affairs and give probative effect to that evidence." Md. Code Ann., State Gov't § 10-213(b) (LexisNexis 2021). The hearing officer may also exclude evidence that that is incompetent, irrelevant, immaterial or unduly repetitious. *Id.* § 10-213(d). Further, the hearing officer is required to conduct the hearing "in a manner necessary to ensure the fair resolution of the issues" and may use the Maryland Rules of Civil Procedure as a guide for resolving procedural issues. COMAR 31.02.01.07D. Parties can, and often do, move to exclude evidence and seek protective orders. *See, e.g.*, Md. Rule 2-403. Further, documents can be filed under seal in certain circumstances. *See* Md. Rule 20-201.1(d); *see also* Md. Rule 16-934(b) (providing that a party to an action may file a petition to seal or otherwise limit inspection of a case record).

Those aggrieved by final orders of the Commissioner issued after a hearing are entitled to seek judicial review in state court. Ins. § 2-215.

**The Underlying Investigation and Determination Letters**

Appellants are insurers licensed to do business in Maryland. (JA9.) Insurers are regulated by the Commissioner pursuant to Title 4 of the Insurance Article and are subject to, among other things, certain anti-discrimination provisions. *See* Ins. § 27-503.

In January 2021, the Administration received three complaints from insurance producers who had been appointed as agents by Appellants. (JA132.) The Administration later received one additional complaint. (JA132.) The complainants alleged that their agency agreements with Appellants had been terminated, or otherwise unilaterally amended to their detriment, because of their race and ethnicity or because of their customers' race and ethnicity. (JA132.) As a result of these complaints, the Administration opened investigations into the individual complaints. (JA132.) It also opened a market conduct examination (JA132), which looks at broader issues implicated by the individual complaints, *see* Ins. § 2-205(b) (Commissioner shall examine "the affairs, transactions, accounts records, assets, and financial condition" of each authorized insurer "[w]henever the Commissioner considers it advisable"). The procedures governing the conduct of an examination are spelled out by statute. *See* Ins. §§ 2-207 – 2-209.

During the investigations, the Administration reviewed material it had received from the complainants and from Appellants, including several items it had

received through the market conduct examination. (JA132.) Based on this review, on May 24, 2023, the Administration issued three determination letters. (JA132.) It issued one additional determination letter the following day. (JA132.) The determination letters found that Appellants' imposition of reduced commissions and other penalties, and in two cases termination of agency agreements, had violated the antidiscrimination provisions set forth in §§ 27-503(d) and 27-503(f) of the Insurance Article.

These four determination letters were subject to Appellants' right to request a hearing, a right they exercised with respect to all four letters on June 2, 2023. (JA145-171.) The Administration granted the requests. (JA101, JA133.) The letters granting the hearing requests contained statements that documents given to the Administration by the Appellants or complainants, or otherwise considered as part of the complaint investigation process, would be submitted to the hearing officer to become part of the evidentiary file. (JA101, JA103, JA105, JA107.) The letters added: "You may object to having a document accepted as evidence. Any objection should be filed with the hearing officer before the hearing." (JA101, JA103, JA105, JA107.)

On June 11, 2023, the Administration sent a follow-up letter to clarify that it would not be sending its complete investigative files to the hearing officer "at this time." (JA172.) Instead, the Administration, through counsel, would seek to have

evidence admitted at the hearing. (JA172.) The letter went on to emphasize that "[y]ou will have an opportunity to object to any evidence proffered by the Administration, both at the hearing itself and prior to the hearing through motion practice." (JA172.) Thus far, no documents have been submitted to the hearing officer, and Appellants have not filed any objection or motion to exclude documents in the administrative proceedings.

**Appellants' Parallel Federal Lawsuit**

In the meantime, just after filing the hearing requests, Appellants filed this lawsuit against the Administration and the Commissioner in the U.S. District Court for the District of Maryland. (JA3.) In addition to certain state law claims, the complaint included claims under 42 U.S.C. § 1983 that the Administration and the Commissioner violated Appellants' substantive and procedural due process rights guaranteed under the United States Constitution. (JA34, JA37.) The complaint sought a declaration that the determination letters are unlawful, as well as an injunction prohibiting the Administration from disseminating the determination letters or using documents obtained from Appellants in the market conduct examination. (JA42-45.) Appellants simultaneously filed a motion for a temporary restraining order or, in the alternative, a preliminary injunction. (JA48-54.) That motion sought to enjoin the Administration from disseminating the letters. (JA53.) It also sought to enjoin the Administration from using documents it had obtained

from Appellants in the market conduct examination, including at the hearing on the determination letters. (JA48-90.)

After a telephonic conference with all counsel, the district court scheduled a hearing on Appellants' motion for June 12. (JA3.) The court also asked the parties to submit briefing on the doctrine of abstention and any other issues relevant to the motion. (JA3.) In response, Appellants filed a bench memorandum on abstention (JA174-194) and Appellees filed an opposition to the motion for temporary restraining order (JA129-143). Appellee's opposition requested that the motion be denied and the complaint dismissed because of the ongoing Maryland administrative proceedings, pursuant to the *Younger*[1] and *Burford*[2] abstention doctrines. (JA130, JA143.)

At the scheduled hearing on Appellants' motion, the parties discussed a potential resolution of this case. After those discussions, the parties set forth the material terms of the agreement orally on the record, with a plan to document the agreement in the form of an administrative consent order. As a result, the case was administratively stayed by the district court. (JA3.) The parties ultimately were

---

[1] *Younger v. Harris,* 401 U.S. 37 (1971).

[2] *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

unable to reach a final agreement, however, and Appellants moved to lift the stay on July 14, 2023. (JA225.)

By order issued August 3, 2023, the district court lifted the stay and scheduled an oral ruling on the pending motions. (JA220.) Delivering that oral ruling on August 14, the district court granted the motion to dismiss the complaint[3] and abstained from exercising jurisdiction under both the *Burford* and *Younger* abstention doctrines. (JA244-246.)

With regard to *Younger*, the district court held that Appellants will have an adequate opportunity to raise their constitutional claims in the administrative hearings and that Maryland courts have held that the Administration is authorized to consider constitutional matters. (JA236.) It further noted that Appellants have raised their due process challenges in their hearing requests and that any decisions that result from the hearings would be subject to judicial review. (JA237.) The district court also concluded that the exceptions to *Younger* abstention did not apply. (JA239-244.)

With regard to *Burford*, the district court agreed with Appellants that the Commissioner's authority to use the documents in question pursuant to Insurance

---

[3] The transcript reads: "Therefore the stay motion is granted." (JA246.) Appellees believe the word "stay" should be "State's," especially as there was no stay motion pending before the court.

§ 2-209 (g)(3) is of substantial public import and that inserting the federal court into the case will disrupt the Administration's efforts to enforce the Insurance Article. (JA245.)  Further, the district court explained that whether the documents obtained through the market conduct examination may be used at the administrative hearing is a question of state law, and that the exercise of federal jurisdiction "would disrupt a coherent state policy, as that phrase has been used by the Supreme Court." (JA245.)

The district court also denied Appellants' motion for injunctive relief on abstention grounds.  (JA246.)  This appeal followed.

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion when it dismissed the case pursuant to the *Younger* and *Burford* abstention doctrines.  First, the district court correctly concluded that this case met all of the factors applicable for *Younger* abstention and that none of the exceptions applied.  Appellants do not dispute that the case would interfere with ongoing state proceedings that implicate important state interests; instead, they contend that those proceedings will not give them an adequate opportunity to raise their federal claims.  That is not so:  Upon introduction of evidence before the hearing officer, they will have the chance to object (and seek relief such as sealing) on federal law grounds.  The hearing officer's final decision, moreover, is judicially reviewable.  Meanwhile, Appellants are simply wrong to

contend that the Administration is legally required to make the entire investigative file part of the administrative record, and that the use of otherwise protected materials in these proceedings would violate Insurance § 2-209(g). And Appellants offer no reason to conclude that the district court abused its discretion in declining to apply any of the *Younger* exceptions, including on the ground of bias or improper purpose.

Second, the district court acted within its broad discretion in determining that abstention was appropriate under *Burford*. The underlying administrative proceedings implicate difficult and important questions of state law, relating to the conduct of administrative hearings and implementation of the Insurance Article. Further, a federal court decision would have effects going well beyond this case and would interfere with the Administration's efforts to formulate and implement coherent state policy in a highly regulated industry.

Finally, deciding motions on the briefs, without holding argument, is expressly contemplated by the Federal Rules of Civil Procedure, expressly authorized by the District of Maryland's local rules, and entirely routine. Appellants provide no reason to conclude that the district court abused its discretion in deciding these motions based on the extensive papers submitted by the parties, where those papers made it clear that abstention was warranted.

**ARGUMENT**

## I. THE COURT REVIEWS THE DISTRICT COURT'S ABSTENTION DETERMINATIONS AND DECISION NOT TO HOLD A HEARING FOR ABUSE OF DISCRETION.

This Court reviews a district court's abstention determinations under both *Younger* and *Burford* for abuse of discretion. *Air Evac EMS, Inc. v. McVey*, 37 F.4th 98, 101 (4th Cir. 2022). As this Court has explained, under this standard, "if there is evidence supporting the court's finding, [it] must affirm regardless of whether [it] would have decided the question in the same way were [it] sitting in the district court's shoes." *Id.* This Court likewise reviews a district court's decision to decide a motion on the briefs, without a hearing, for abuse of discretion. *See Kitlinski v. United States Dep't of Justice*, 994 F.3d 224, 232 (4th Cir. 2021).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ABSTAINING BASED ON *YOUNGER* AND CONSEQUENTLY DENYING THE MOTION FOR INJUNCTIVE RELIEF.

*Younger* abstention is founded on the notion of "comity," which includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and the institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. Under the *Younger* doctrine, a federal court should abstain from exercising jurisdiction if (1) an action asks it to interfere in ongoing state proceedings; (2) those

proceedings implicate important state interests; and (3) the plaintiff will have an adequate opportunity to raise federal claims in those state proceedings. *Middlesex County Ethics Committee v. Garden State Ass'n*, 457 U.S. 423, 432 (1982); *see, e.g.*, *Moore v. City of Asheville*, 396 F.3d 385, 390 (4th Cir. 2005). This precept applies regardless of whether the federal action was filed before the state action. *See Moore*, 396 F.3d at 394-395 (issues of timing do not alter proper legal analysis; instead, focus should be on the core *Younger* concerns). *Younger* abstention applies not only to state judicial proceedings, but also to state administrative proceedings that are "judicial in nature." *Martin Marietta Corp. v. Maryland Comm'n on Human Rels.*, 38 F.3d 1392, 1397 (4th Cir. 1994); *see Ohio Civ. Rts. Comm'n v. Dayton*, 477 U.S. 619, 627 (1986) (explaining that *Younger* applies to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim")

*Younger* abstention was appropriate here because the case satisfies all three *Middlesex* factors. First, the Administration's investigation of the four complaints, its subsequent determination that Appellants violated §§ 27-503(d) and (f), and the hearings requested by Appellants constitute ongoing proceedings within the meaning of the doctrine. *See, e.g., Ohio Civ. Rts. Comm'n*, 477 U.S. at 627; *Middlesex*, 457 U.S. at 432.

Second, Maryland has an important interest in regulating the insurance industry and protecting the interests of consumers (and agents) against unfair trade practices. *See Fuller v. Bartlett*, 894 F. Supp. 874, 879 (D. Md. 1995) (recognizing that "[t]he importance of Maryland's interest in regulating the insurance industry strongly favors abstention" and citing *Charleston Area Med. Ctr., Inc. v. Blue Cross & Blue Shield Mut., Inc.*, 6 F.3d 243, 250 n.5 (4th Cir. 1993)). Indeed, States' plenary power to regulate the business of insurance is specifically recognized in the McCarran-Ferguson Act's declaration that the "continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to [such] regulation." 15 U.S.C. § 1011; *see SEC v. Variable Annuity Life Ins. Co. of Am.,* 359 U.S. 65, 69 (1959) (explaining that the regulation of insurance "has traditionally been under the control of the states").

Appellants do not dispute that this case satisfies these first two factors. As to the third, however, they claim that they will not have an adequate opportunity to raise their federal claims in the Administration hearings on the determination letters. Appellant's Br. 24. As explained below, that contention is incorrect: The state proceedings will provide Appellants with ample opportunity to have their federal claims adjudicated, and they have not borne their burden of establishing otherwise.

*See Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (under *Younger*, burden to show inadequacy of state court proceedings belongs to plaintiff).

> **A.** **The District Court Did Not Abuse Its Discretion in Determining That Appellants Will Have an Adequate Opportunity to Raise Their Federal Claims in the Ongoing State Proceedings.**
>
> **1.** **The Administration's proceedings will allow Appellants to object to evidence and raise their federal claims.**

Appellants will have ample opportunity to raise their federal claims in the Administration's proceedings. At any hearing, Appellants will have all the rights of a party to present evidence and argument and, as is especially relevant here, to object to the introduction of any evidence. *See* Ins. § 2-213(b)(1); State Gov't § 10-213; COMAR 31.02.01.05-1D ("A party may object to the production of a file, memorandum, correspondence, document, object, or tangible thing by filing a motion to quash discovery or for other relief"). Indeed, in notifying Appellants that "documents given to us by you or the complainant that were considered as part of the investigation process will be submitted to the hearing officer to become part of the evidentiary file," the letters granting Appellants' hearing requests emphasized that "[y]ou may object to having a document accepted as evidence." (JA101, JA103, JA105, JA107.)

In the course of exercising these rights, Appellants will have adequate opportunity to raise federal questions, including their due process claims. *See e.g. Kaplan v. CareFirst*, 614 F. Supp. 2d 587, 595-596 (D. Md. 2009); *Fuller v. Bartlett*, 894 F. Supp. 874, 879 (D. Md. 1995); *Larsen v. Cigna Healthcare Mid-Atlantic, Inc.,* 224 F. Supp. 2d 998 (D. Md. 2002); *Jews v. Tyler*, 2009 WL 5206480, Civil No. L-08-2075 (D. Md. Jan. 16, 2009) (order granting motion to dismiss). On that score, the Supreme Court of Maryland has confirmed that the Administration is authorized to consider constitutional matters. *See United Ins. Co. of Am. v. Maryland Ins. Admin.,* 450 Md. 1, 18-19 (2016); *Insurance Comm'r v. Equitable Life Assurance Soc. of the U.S.*, 339 Md. 596, 619-621 (1995). And indeed, in their hearing requests, Appellants raised the very same claims that they have raised in federal court. (JA145-171.)

Appellants also will have the opportunity to seek to have documents that are admitted into evidence placed under seal and made available only to the parties. *See, e.g.*, COMAR 31.02.01.07D ("The Maryland Rules of Civil Procedure may be used as a guide for resolving issues regarding the conduct of the hearing."); Md. Rule 16-904 (providing that judicial records are presumed open to the public "unless the court expressly orders otherwise"); Md. Rule 16-934(b) (providing that a party to an action may file a petition to seal or otherwise limit inspection of a case record filed in the

action).  These types of issues are for the hearing officer to decide, just as they would be for a trial judge to decide in a court proceeding.

Finally, should Appellants be dissatisfied with the outcome, they will be able to seek judicial review in Maryland's state courts.  *See* Md. Code Ann. Ins. § 2-215. And even if they might prefer federal court, Appellants cannot obtain federal intervention on the basis of their belief that federal court is a more favorable forum. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 610 (1975) (opportunity to raise federal claims in state proceeding will not be deemed inadequate "merely because the [party opposing abstention] . . . believes that his chances of success on appeal are not auspicious"); *id.* at 608 (explaining that a necessary concomitant of *Younger* is that a party wishing to challenge the judgment of a state proceeding in federal court must first "exhaust his state appellate remedies").

### 2.  Providing documents to the hearing officer does not make the Administration's proceedings inadequate.

Despite the foregoing, Appellants maintain that their opportunity to raise their federal claims in the Administration's proceedings will be inadequate because (1) the complete files from the four complaints must be provided to the hearing officer; (2) once provided to the hearing officer, those files will unlawfully be stripped of any protection they have under Insurance § 2-209; and (3) Appellants' due process

rights thus will be violated. Appellant's Br. 14, 28-30. That argument fails at every turn.

To begin, it is simply not true that (as Appellants claim) the "hearing officer is statutorily required to make the MIA's entire file part of the hearing record." Appellants' Br. 29. To support that claim, Appellants quote § 10-213(a)(2) of the State Government Article as saying, categorically, that "MIA 'shall make the [File] part of the record.'" *Id.* (quoting State Gov't § 10-213-(a)(2); emphasis omitted). That assertion grossly distorts the statute, which actually says: "If the agency *has any evidence that the agency wishes to use* in adjudicating the contested case, the agency shall make *the evidence* part of the record." State Gov't § 10-213(a)(2) (emphasis added). Thus, the statute does not require the Administration to make its "entire file" part of the hearing record. Appellant's Br. 29. It merely requires the Administration to make "any evidence that the agency wishes to use" part of the record, thus ensuring that it does not rely on extra-record evidence. State Gov't § 10-213(a)(2).[4]

---

[4] Similarly, Appellants mischaracterize the record when they state that the Administration's letters granting the hearing requests "confirmed that **_all_** '[d]ocuments given to [the MIA] by [Erie] . . . that were considered as part of the [Phase II Licensing Examination] process' . . . 'will be submitted to the hearing officer to become part of the examination file.'" Appellants' Br. 14 (quoting JA101-108; emphasis, brackets, and first ellipsis in original). In fact, the quoted statement

Further, when documents are provided to the hearing officer, Appellants will have the opportunity to object to their admission into the record. State Gov't § 10-213(d). Appellants might object, for instance, that admission of particular documents would violate Insurance § 2-209, or would violate their due process rights. The hearing officer would then have to rule on those objections in deciding whether to admit the documents.[5] These are, as the district court found, issues for the hearing officer to decide. (JA234.) Whether or not Appellants ultimately agree with the hearing officer's rulings is immaterial, for the premise of *Younger* is that state tribunals are fully competent to decide not just state law questions, but federal ones as well. *See, e.g.*, *Richmond, Fredericksburg, Potomac R.R. Co. v. Forst,* 4 F.3d 244, 251 (4th Cir. 1993) (explaining that the *Younger* doctrine "recognizes that state courts are fully competent to decide issues of federal law and has as a corollary the idea that all state and federal claims should be presented to the state courts"); *cf. Arthur v. Ticor Title Ins. Co*., 569 F. 3d 154, 161 (4th Cir. 2009) (requiring plaintiff to exhaust administrative remedies under Maryland Insurance Article); *Carter v.*

---

begins "Documents given to us" (JA101, JA103, JA105, JA107); the word "all," triply emphasized in Appellants' brief, appears nowhere in the letters.

[5] Offering evidence at the time of a hearing is not a "unique and unlawful procedure solely for this case," as Appellants assert. Appellants' Br. 30. Rather, it is the standard method employed whenever the Administration has found a violation and the Office of the Attorney General is representing the Administration at the hearing.

*Huntington Title & Escrow, LLC,* 420 Md. 605, 635-636 (2011) (same). Thus, the district court was correct when it found that Appellants will "have ample opportunity to examine the proposed evidence and to object to such evidence being introduced into the administrative record." (JA242.) Further, if evidence that Appellants wish to shield does become part of the administrative record, they are free to move to seal that evidence and are free to advance their due process arguments as a ground for sealing. *See* Md. Rule 16-934(b).

Finally, in claiming that there are irreparable federal law violations inherent in the mere transfer of documents to the hearing officer, and thus that immediate federal intervention is warranted, Appellants appear to predicate their due process claims on purported violations of § 2-209 of the Insurance Article. Appellants' Br. 24-28. But it is simply incorrect that (as Appellants argue) § 2-209 prohibits the Administration from using, in proceedings concerning whether Appellants violated § 27-503 of the Insurance Article, documents that it has obtained in its related market conduct examination. Appellants' Br. 25. Section 2-209(g)(2) does provide protection for certain materials obtained or generated by the Commissioner, deeming them "confidential and privileged." Ins. § 2-209(g)(2). But the very next paragraph provides: "*Notwithstanding paragraph (2) of this subsection*, the Commissioner may use any document, material, or information that is subject to this subsection to

further any regulatory or legal action brought as part of the duties of the Commissioner." *Id.* § 2-209(g)(3) (emphasis added).

Here, § 2-209(g)(3) straightforwardly permits the Administration's use of documents otherwise protected by § 2-209(g)(2). The Administration's investigation of the complaints it received, its subsequent issuance of the determination letters, and its forthcoming conduct of hearings at Appellants' request constitute regulatory actions brought as part of the Commissioner's duties. *See id.* § 2-108(2), (4) (providing that the Commissioner "shall enforce" the Insurance Article and "in addition to examinations and investigations expressly authorized, may conduct examinations and investigations of insurance matters as necessary to fulfill the purposes of" the Insurance Article). As a result, in conducting the proceedings of which Appellants complain, the Administration has the authority to use "any" document obtained in the related market conduct examination, and that authority trumps any protection that § 2-209(g)(2) otherwise provides. *See id.* § 2-209(g)(3) (allowing use of documents "[n]otwithstanding paragraph (2) of this subsection"). Notably, § 2-209(g)(3) does not require that the market conduct examination be complete in order for the Administration to use documents in this fashion. *See id.*[6]

---

[6] To the extent that Appellants contend that the determination letters' references to four documents are inappropriate, that argument fails because the

The cases cited by Appellants are not to the contrary; indeed, they predate the enactment of Insurance § 2-209(g)(3) in 2007. *See* 2007 Md. Laws ch. 110, § 1. They also are distinguishable on their facts. *Chinwuba v. Larsen*, which was subsequently overturned, did not involve the use of documents in a regulatory action but, rather, the dissemination of documents at a press conference. 142 Md. App. 327, 364 (2002), *rev'd*, 377 Md. 92 (2003). Similarly, *Nagy v. Baltimore Life Insurance Co*. involved not a regulatory action but an attempt to obtain documents from the Administration by parties to a private lawsuit. 49 F. Supp. 2d 822 (D. Md. 1999), *aff'd in part and vacated in part*, 2000 WL 718391 (4th Cir. June 5, 2000). Here, by contrast, the four determination letters and related proceedings present exactly the circumstances that the language in § 2-209(g)(3) contemplates.

### B.    The District Court Did Not Abuse Its Discretion in Finding That the "Extraordinary Circumstances" Exception to *Younger* Does Not Apply Here.

Alternatively, Appellants argue that the district court should not have abstained under *Younger* because of "extraordinary circumstances" taking the form of bias on the part of the Administration. Appellant's Br. 31-38. Pointing to two letters that purportedly show that the Determination Letters were "politically

---

determinations, which are one component of the investigations at issue here, are required to state the grounds on which they are based. *See* Ins. § 2-204(b)(iii). It is thus incorrect that (as Appellants maintain) the determination letters, or their use of those four documents, are "plainly invalid." Appellant's Br. 46.

motivated," Appellants complain that the Commissioner had "extensive communications" with the NAACP and the complainants, "with enforcement efforts soon following thereafter." Appellants' Br. 32. Appellants' claim of bias consists of little more than innuendo and does not demonstrate extraordinary circumstances.

Addressing the "extraordinary circumstances" exception to *Younger*, this Court has explained that "the path to extraordinary circumstances is exceedingly narrow." *Air Evac*, 37 F. 4th at 100. Such circumstances must include "actual impediments to the state's ability to address the federal issues." *Id.* The fact that the "extraordinary circumstances" inquiry overlaps with the third *Middlesex* factor, this court has explained, "merely highlights the importance of deferring to the state proceedings as long as the litigants have a fair shot at advancing their positions." *Id.* at 100 n.1.

Against that background, the two letters that Appellants cite do not make these circumstances extraordinary. In the first, dated October 4, 2022, the Commissioner responded to a NAACP representative that, with regard to the four complaints at issue here, the Administration "is acting with deliberate speed to ensure a fair determination that can be supported by evidence." (JA92). The letter noted that the Administration has met with the complainants and their counsel and, as to private litigation, that "[w]e trust that the Complainants' counsel will make the appropriate decision about how to pursue the cases." (JA92.) The letter stressed that "[w]hile

we understand that the Complainants are concerned, our goal is to arrive at the correct conclusion and have a strong basis for any administrative action that results." (JA93.) This letter cannot be construed to prejudge the investigation or to show favoritism, and Appellants' arguments to the contrary are speculative at best.

The second letter, dated approximately four months later, was sent by the Administration's counsel. With regard to the four complaints, the letter merely stated that the investigations were ongoing, and that the Administration's findings in the market conduct examination may affect those investigations. (JA95.) This letter, too, shows no bias on the part of the Administration. As this Court noted in *Air Evac*, "there is nothing inherently wrong with a regulatory agency communicating with one of its citizens." *Air Evac*, 37 F. 4th at 101.

Contrary to Appellant's contentions, the decision in *Air Evac* does not suggest that the district court abused its discretion in declining to find these circumstances extraordinary. *See* Appellant's Br. 34-35. In *Air Evac*, this Court concluded that the district court had not abused its discretion in finding extraordinary circumstances, given the "extensive communication" between the West Virginia Insurance Commissioner and Air Evac's main in-state rival, because the Commissioner had prejudged the outcome of the state administrative proceeding, and because the timeline of the Commissioner's investigation suggested favoritism toward an in-state competitor. *Id*. at 101. Whereas the communications in that case showed an

interest in favoring a local business, the letters here merely show a desire to reach the right conclusion in open and ongoing investigations.

*Gibson v. Berryhill*, 411 U.S. 564 (1973), on which Appellants also rely, is no more availing. There, the Alabama Board of Optometry, which "acts as both prosecutor and judge in delicensing proceedings," comprised private optometrists who had a personal pecuniary stake in the outcome of the case. *Id.* at 571. Here, the district court was correct to observe that "[n]othing whatsoever before this court suggests that the administration has a . . . 'substantial pecuniary interest in legal proceedings,' . . . or any equivalent interest that would be unfair or result in bias." (JA241.) The court likewise did not abuse its discretion in concluding that there was "no basis to suggest" that the hearing officer will be tainted or biased against Appellants "when the materials are transferred." (JA241.)

Nor does the fact that the hearing officer is hired by the Administration raise the specter of bias. *See, e.g.*, *Consumer Prot. Div., Office of the Attorney Gen. v. Consumer Publ'g Co., Inc.*, 304 Md. 731, 762 (1985) (combination of prosecutorial and adjudicatory functions of Consumer Protection Division "fall well within the range of acceptable combinations of functions set forth in" *Withrow v. Larkin*, 421 U.S. 35 (1975)); *Marcello v. Bonds*, 349 U.S. 302, 312-314 (1955); *Shaughnessy v. United States*, 349 U.S. 280 (1955); *Roberts v. Morton*, 549 F.2d 158, 164 (10th Cir. 1976)) (issuance of news releases by Secretary of Interior that the Department had

"wiped out" more than 5,000 mining claims did not taint the hearing officer's decision that unpatented claims were invalid because the hearing officer had nothing to do with the news release). Here, the determination letters were issued by the Associate Commissioner for the Administration's Property and Casualty Division, not by the hearing officer, who by statute is prohibited from communicating *ex parte* directly or indirectly regarding the merits of the case with any party to the case or the party's attorney. (JA12); State Gov't § 10-219(a). If the mere fact that the hearing officer is also an Administration employee rendered the process constitutionally infirm, all hearings could potentially be subject to the same challenge and could spawn collateral federal litigation akin to this case.

### C. The District Court Did Not Abuse Its Discretion in Declining to Find That Any Other Exception Applied.

Appellants also claim that the district court's oral ruling inadequately addressed, or failed to address, other *Younger* exceptions that they had raised. *See* Appellants' Br. 42. In fact, the court made clear that it had considered Appellants' arguments and rejected them, even if it did not structure its ruling to match Appellants' bench memorandum. (JA239-244.) Appellants fail to show any way in which the court abused its discretion in doing so.

First, the district court concluded (correctly, for the reasons discussed above) that Appellants would have an adequate opportunity to raise their statutory claims in the state proceedings. (JA236.)

Second, with regard to Appellants' claim that the hearing officer will be biased merely by seeing the documents to which Appellants may object, Appellants' Br. 42-44, the district court properly determined that "[t]here is no basis to suggest that the hearing officer . . . will be tainted or biased when the materials are transferred" (JA241). Rather, as the court explained, "[i]t is his or her job to consider them." (JA241-242.)

Third, as to Appellants' claims that they would be irreparably injured by the transfer of market conduct materials to the hearing officer because those materials supposedly would lose their protection, Appellants' Br. 44-46, the court correctly observed that "the information contained in the determination letters is already public." (JA242.) It also correctly observed that "there is no violation for dissemination of market conduct materials to . . . the hearing officer because they're part of or arms of the [Administration] itself." (JA242). As for the hearing officer's treatment of those materials, the court correctly explained that "[p]laintiffs will have ample opportunity to examine proposed evidence and object to such evidence being introduced into the administrative record," including on the basis of confidentiality or privilege. (JA242-243 (explaining that "the comprehensive state administrative

procedure protects due process rights and has procedural protections that are able to guard against dissemination or access to statutorily-confidential information").)

Fourth, the district court appropriately rejected Appellants' claim of an improper purpose, Appellants' Br. 46, when it concluded (as noted above) that "[n]othing whatsoever before this court suggests that the administration has a . . . 'substantial pecuniary interest in legal proceedings,' . . . or any equivalent interest that would be unfair or result in bias" (JA241.)

Fifth, as to the claim that the determination letters are "plainly invalid," Appellants' Br. 46-47, the district court properly concluded that "there has been no improper disclosure yet because all disclosures are authorized by § 2-209(g)(3)" (JA242).

## III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ABSTAINING BASED ON THE *BURFORD* DOCTRINE.

In addition to dismissing on the basis of *Younger*, the district court alternatively relied on the *Burford* abstention doctrine. Under that doctrine, when adequate state review is available, a federal court "should decline to interfere with the proceedings or orders of state administrative agencies" if (1) "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case"; or (2) federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of

substantial public concern." *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks omitted).

The district court did not abuse its discretion in concluding that this case satisfies both of those criteria. First, this case presents two interrelated sets of difficult and important state law questions: one involving Appellants' alleged violations of the nondiscrimination provisions of the Insurance Article, and the other involving the manner in which the Commissioner may use information obtained in a market conduct examination pursuant to Insurance § 2-209(g)(3). (JA245-246.) Resolution of these disputes, moreover, could resonate beyond the four administrative cases. (JA246.)

As in the case of their arguments against *Younger* abstention, Appellants are again wrong to contend that Insurance § 2-209(g)(2) straightforwardly bars the use of protected materials in these proceedings. Appellants' Br. 48, 50-55. The cases on which Appellants rely are factually inapposite and, moreover, were decided before § 2-209(g)(3) was enacted. *See* discussion above at pages 20-22. They are no more relevant in the *Burford* context than in *the Younger* context, and they certainly do not mean that the Administration's conduct of hearings will result in a lack of "uniformity" within state law. Further, Appellants err in maintaining that merely providing documents to the hearing officer will automatically strip them of any § 2-209(g)(2) protection they might have. *See* discussion above at pages 18-19,

27. In any event, to the extent that there are questions about the applicability of § 2-209(g)(3), or its interplay with § 2-209(g)(2), the point of *Burford* abstention is that those are determinations for the hearing officer to make in the first instance.

The district court was also correct to conclude that prohibiting the hearing officer from resolving these issues—the consequence of Appellants' suit—would be "disruptive" of the Administration's efforts to "establish a coherent policy with respect to" how to enforce the Insurance Article. (JA245.) As the district court explained, the hearing officer's authority to conduct the state administrative proceedings and the Commissioner's authority to use information obtained from the market conduct examination are (notwithstanding Appellants' flawed arguments regarding the application of Insurance § 2-209(g)(2)) "plainly within the bounds of the statute and of substantial public importance." (JA245-246.) The Supreme Court of Maryland, moreover, gives considerable weight to an agency's application and interpretation of statutes that it administers. *Miller v. Comptroller of Md.*, 398 Md. 272, 280 (2007); *Lussier v. Maryland Racing Comm'n,* 343 Md. 681, 696-697 (1996); *Division of Labor & Indus. v. Triangle Gen. Contrs., Inc.*, 366 Md. 407, 417 (2001); *Schwartz v. Department of Nat. Res.*, 385 Md. 534, 554 (2005). This precept only underscores the disruption that would result if a federal court were to step in now. More broadly, an order from the district court deciding what evidence the hearing officer can view or consider would only encourage plaintiffs to come to

federal court to evade legitimate state administrative proceedings, based on manufactured claims of bias.

**IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DISMISSING THE COMPLAINT AND DENYING THE MOTION FOR INJUNCTIVE RELIEF WITHOUT HOLDING A HEARING.**

Finally, Appellants fail to show error in the district court's decision to dismiss the complaint based on *Younger* and *Burford*, and thus to deny their request for injunctive relief, based on the briefing submitted by the parties.

Federal Rule of Civil Procedure 78(b) provides that a court may provide for submitting and determining motions on briefs without oral hearings. Fed. R. Civ. P. 78(b). The U.S. District Court for the District of Maryland has done just that, via local rule. *See* D. Md. Local R. 105.6 ("Counsel may (but need not) file a request for hearing. Unless otherwise ordered by the Court, however, all motions shall be decided on the memoranda without a hearing."); *see also* 2 Steven S. Gensler & Lumen N. Mulligan, Fed. R. Civ. P. Rules & Commentary, R. 78 ( "Today, most pretrial motions in civil cases—including dispositive motions like motions to dismiss under Rule 12(b)(6) and Rule 56 summary judgment motions—are decided on the briefs."). This Court has repeatedly endorsed this practice. *See Kitlinski*, 994 F.3d at 232-233 (district court did not abuse its discretion in ruling on motion for summary judgment without a hearing based on briefs); *CVLR Performance Horses,*

*Inc. v. Wynne*, 792 F.3d 469, 277 (4th Cir. 2015) ("[I]t is within the sound discretion of the district court to dispose of a motion without a hearing.").

In this case, the district court did not abuse its discretion in dismissing the case, and consequently denying the motion for a temporary restraining order, based only on the extensive briefing provided by the parties. Indeed, the transcript of the court's oral ruling makes clear that the court carefully considered the abstention issues and arrived at a well-reasoned decision. (JA219-246.) Its decision to abstain necessarily precluded injunctive relief, and likewise obviated any need to resolve any factual dispute that otherwise might have borne on such relief. Appellants, in short, have failed to demonstrate that a hearing was required. Rather, as the district court determined, the "issues raised can be resolved on the parties' submissions alone." (JA228.)

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ J. Van Lear Dorsey
_____
J. VAN LEAR DORSEY
BETTY S. DIENER
Assistant Attorney General
200 Saint Paul Place
27th Floor
Baltimore, Maryland  21202
van.dorsey@maryland.gov
(410) 468-2023
(410) 468-2086 (facsimile)

Attorneys for Appellees

## REQUEST FOR ORAL ARGUMENT

Appellees respectfully request that the Court hear oral argument in this appeal, as it involves important questions concerning the relationship between federal court jurisdiction and a complex state statutory and regulatory scheme.

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 15,535 words, excluding the parts of the brief exempted by Rule 32(f).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ J. Van Lear Dorsey

_____

J. Van Lear Dorsey

# TEXT OF PERTINENT PROVISIONS

Annotated Code of Maryland, Insurance Article (LexisNexis 2017 & Supp. 2023)

## Md. Code Ann., Ins. § 2-101.

(a)(1) There is a Maryland Insurance Administration.

(2) The Administration is an independent unit of the State government.

(b) The head of the Administration is the Maryland Insurance Commissioner.

(c) The Commissioner shall control and supervise the Administration.

## Md. Code Ann., Ins. § 2-103.

(a)(1) The Governor shall appoint the Commissioner with the advice and consent of the Senate.

(2) The Commissioner shall serve for a term of 4 years.

(3) The Commissioner is directly responsible to the Governor.

(4) The Commissioner shall counsel and advise the Governor on all matters assigned to the Administration.

(5) The Commissioner may be removed by the Governor for:

(i) malfeasance;

(ii) incompetence; or

(iii) failure to carry out the duties of office in a manner consistent with the regulatory purpose and requirements of this article.

(b)(1) The Commissioner is responsible for the operation of the Administration.

(2) The Commissioner shall:

(i) exercise the powers and perform the duties of the Administration under this article;

(ii) organize the Administration to function efficiently and to serve the public; and

(iii) establish, in the Administration, the units necessary for the exercise of the powers and performance of the duties of the Administration.

(c) The Commissioner shall devote full time to the duties of office.

(d) The Commissioner is in the executive service of the State Personnel Management System and is entitled to compensation under the Executive Pay Plan in accordance with the State budget.

(e) The Commissioner shall be covered by a surety bond in the form and amount required by law.

(f)(1) The Commissioner shall have a seal of office in the form approved by the Governor.

(2) The impression and description of the seal shall be filed with the Secretary of State.

**Md. Code Ann., Ins. § 2-108.**

In addition to any powers and duties set forth elsewhere by the laws of the State, the Commissioner:

(1) has the powers and authority expressly conferred on the Commissioner by or reasonably implied from this article;

(2) shall enforce this article;

(3) shall perform the duties imposed on the Commissioner by this article; and

(4) in addition to examinations and investigations expressly authorized, may conduct examinations and investigations of insurance matters as necessary to fulfill the purposes of this article;

(5) shall enforce § 15-103(b)(21)(vi) of the Health – General Article.

**Maryland Code Ann., Ins. § 2-201.**

(a) The Commissioner may bring an action in a court of competent jurisdiction to enforce this article or an order issued by the Commissioner under this article.

(b) The Commissioner shall be represented by the Attorney General, an assistant Attorney General, or another attorney at law designated by the Attorney General.

(c) Whenever the Commissioner believes that a person has committed a violation of this article for which criminal prosecution is provided, the Commissioner shall refer the alleged violation to:

     (1) the State's Attorney for the county where the violation allegedly occurred or the person resides; or

     (2) the Attorney General, if the alleged violation is statewide and not local in nature.

(d)  (1) The Commissioner may investigate any complaint that alleges that a fraudulent claim has been submitted to an insurer.

     (2) If the Commissioner finds that a complaint has merit, the Commissioner

may refer the complaint to an appropriate law enforcement authority, including the Attorney General, for appropriate action.

(e) The Commissioner may enforce the provisions of this article, and may impose any penalty or remedy authorized by this article, against a person that is under investigation for or charged with a violation of this article if:

(1) the person's certificate of authority, certificate of qualification, license, or registration is no longer in effect; and

(2) the alleged violation occurred no more than 5 years before surrender or lapse of the certificate, license, or registration.

**Maryland Code Ann., Ins. § 2-204.**

(a) An order or notice of the Commissioner must be in writing and signed by the Commissioner or an individual authorized by the Commissioner.

(b)(1) An order of the Commissioner shall state:

(i) its effective date;

(ii) its purpose;

(iii) the grounds on which it is based; and

(iv) the provisions of this article under which action is or proposed to be taken.

(2) Failure to designate a particular provision of this article in accordance with paragraph (1)(iv) of this subsection does not deprive the Commissioner of the right to rely on that provision.

(c) An order or notice may be served on a person by:

(1) mailing it to the person at the last known principal place of business of the person, as listed in the records of the Commissioner;

(2) electronic means in accordance with § 2-116 of this title; or

(3) otherwise delivering it to the person.

**Maryland Code Ann., Ins. § 2-205.**

(a) In this section, "analysis" means a process by which the Commissioner collects and analyzes information from filed schedules, surveys, required reports specified in subsection (b) of this section, and other sources in order to:

(1) develop an understanding of the affairs, transactions, accounts, records, assets, and financial condition of the entities specified in subsection (b) of this section; or

(2) identify or investigate patterns or practices of the entities specified in subsection (b) of this section.

(b)(1) Whenever the Commissioner considers it advisable, the Commissioner shall conduct an analysis or examine the affairs, transactions, accounts, records, assets, and financial condition of each:

 (i) authorized insurer;
 (ii) management company of an authorized insurer;
 (iii) subsidiary owned or controlled by an authorized insurer;
 (iv) rating organization; or
 (v) authorized health maintenance organization.

(2) The Commissioner shall examine each domestic insurer and health maintenance organization at least once every 5 years.

(c) The Commissioner shall examine the affairs, transactions, accounts, records, and assets of:

 (1) each insurer and each health maintenance organization that applies for an original certificate of authority to do business in the State; and

 (2) each rating organization that applies for a license to do business in the State.

(d) When examining a reciprocal insurer, the Commissioner may examine the attorney in fact of the reciprocal insurer to the extent that the transactions of the attorney in fact relate to the reciprocal insurer.

(e) The Commissioner may limit the examination of an alien insurer to its insurance transactions and affairs in the United States.

(f) Instead of conducting an examination, the Commissioner may accept a full report, certified by the insurance supervisory official of another state, of the most recent examination of a foreign insurer or health maintenance organization, alien insurer or health maintenance organization, or an out-of-state rating organization.

**Maryland Code Ann., Ins. § 2-207.**

(a)(1) The Commissioner shall conduct an examination of an insurer, health maintenance organization, or private review agent at:

    (i) the home office of a domestic insurer, foreign insurer, health maintenance organization, or private review agent;

    (ii) the United States branch office of an alien insurer, health maintenance organization, or private review agent; or

    (iii) a branch or agency office of the insurer, health maintenance organization, or private review agent.

(2) The Commissioner shall conduct an examination of a person other than an insurer, health maintenance organization, or private review agent at:

    (i) the place of business of the person; or

    (ii) any place where records of the person are kept.

(b) Each person that is examined and its officers, employees, agents, and representatives shall:

    (1) produce and make freely available to the Commissioner or an examiner the accounts, records, documents, files, information, assets, and matters that are in the possession or control of the person and relate to the subject of the examination; and

    (2) otherwise help the examination to the extent reasonably possible.

(c)(1) At the expense of the person being examined, the Commissioner may retain an actuary, accountant, or other expert, who is not otherwise a part of the staff of the Administration, if reasonably necessary to conduct an examination under this article.

    (2) The actuary, accountant, or other expert may rewrite, post, or balance the accounts of the person being examined.

(d)(1) If the Commissioner considers it necessary to value real estate involved in an examination, the Commissioner may request in writing that the person being examined appoint one or more competent appraisers, approved by the Commissioner, to appraise the real estate.

    (2) If the person does not appoint an appraiser within 10 days after the request was delivered to the person, the Commissioner may appoint an appraiser.

    (3) The appraisal shall be made promptly, and a copy of the appraisal report shall be provided to the Commissioner.

(4) The person being examined shall pay the reasonable expense of the appraisal.

**Maryland Code Ann., Ins. § 2-209.**

(a) The Commissioner or an examiner shall make a complete report of each examination made under § 2-205 of this subtitle or § 23-207, § 15-10B-19, or § 15-10B-20 of this article.

(b) An examination report shall contain only facts:

> (1) from the books, records, or documents of the person being examined; or
>
> (2) determined from statements of individuals about the person's affairs.

(c)(1) At least 30 days before adopting a proposed examination report, the Commissioner shall provide a copy of the proposed report to the person that was examined.

> (2) If the person requests a hearing in writing within the 30-day period, the Commissioner:
>
> > (i) shall grant a hearing on the proposed report; and
> >
> > (ii) may not adopt the proposed report until after:
> >
> > > 1. the hearing is held; and
> > >
> > > 2. any modifications of the report that the Commissioner considers proper are made.

(d)(1) After an examination report is adopted by the Commissioner, the examination report is admissible as evidence of the facts contained in it in any action brought by the Commissioner against the person examined or an officer or insurance producer of the person.

> (2) Regardless of whether a written examination report has been made, served, or adopted by the Commissioner, the Commissioner or an examiner may testify and offer other proper evidence about information obtained during an examination.

(e) The Commissioner may withhold an examination or investigation report from public inspection for as long as the Commissioner considers the withholding to be:

> (1) necessary to protect the person examined from unwarranted injury; or
>
> (2) in the public interest.

(f) If the Commissioner considers it to be in the public interest, the Commissioner may publish an examination report or a summary of it in a newspaper in the State.

(g)(1) This subsection applies only to a document, material, or information other than an adopted examination report that:

> (i) is in the control or possession of the Commissioner; and

(ii) is obtained or generated during an analysis or examination conducted under § 2-205 or § 2-206 of this subtitle, Title 7 of this article, or § 23-103, § 15-10B-19, or § 15-10B-20 of this article.

(2) A document, material, or information that is subject to this subsection:

(i) is confidential and privileged;

(ii) is not subject to Title 4 of the General Provisions Article;

(iii) is not subject to subpoena; and

(iv) is not subject to discovery or admissible in evidence in any private civil action.

(3) Notwithstanding paragraph (2) of this subsection, the Commissioner may use any document, material, or information that is subject to this subsection to further any regulatory or legal action brought as part of the duties of the Commissioner.

(4) The Commissioner and any person that receives a document, material, or information that is subject to this subsection while acting under the authority of the Commissioner may not be allowed or required to testify in any private civil action concerning the document, material, or information.

(h)(1) Provided that the recipient agrees to maintain the confidentiality and privileged status of the document, material, or information, the Commissioner may share a document, material, or information, including a document, material, or information that is confidential and privileged under subsection (g) of this section, with:

(i) other State, federal, or international regulatory agencies;

(ii) the National Association of Insurance Commissioners or its affiliates or subsidiaries; or

(iii) State, federal, or international law enforcement authorities.

(2)(i) The Commissioner may receive a document, material, or information, including a document, material, or information that is confidential and privileged, from:

1. other State, federal, or international regulatory agencies;

2. the National Association of Insurance Commissioners or its affiliates or subsidiaries; or

3. State, federal, or international law enforcement authorities.

(ii) The Commissioner shall maintain as confidential and privileged any document, material, or information received under this paragraph with notice or the understanding that it is confidential or privileged under the laws of the jurisdiction that is the source of the document, material, or information.

(3) The Commissioner may enter into agreements governing the sharing and use of information consistent with this subsection.

(4) There is no waiver of any applicable privilege or claim of confidentiality with regard to a document, material, or information as a result of:

   (i) disclosure of the document, material, or information to the Commissioner under this subsection; or

   (ii) sharing of the document, material, or information by the Commissioner under paragraph (1) of this subsection.

**Maryland Code Ann., Ins. § 2-210.**

(a)(1) The Commissioner may hold hearings that the Commissioner considers necessary for any purpose under this article.

   (2) The Commissioner shall hold a hearing:
      (i) if required by any provision of this article; or
      (ii) except as otherwise provided in this article, on written demand by a person aggrieved by any act of, threatened act of, or failure to act by the Commissioner or by any report, regulation, or order of the Commissioner, except an order to hold a hearing or an order resulting from a hearing.

 (b)(1) A demand for a hearing shall state the grounds for the relief to be demanded at the hearing.
   (2) Within 30 consecutive days after receiving a demand for a hearing, the Commissioner shall:
      (i) grant and, unless postponed by mutual consent of the parties, hold the hearing; or
      (ii) issue an order refusing the hearing.
(3) If the Commissioner does not grant or refuse a hearing within the 30-day period, the hearing is deemed to have been refused.

 (c)(1) Except as provided in paragraph (2) of this subsection, a hearing held under this section shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article (Administrative Procedure Act[1]--Contested Cases).
   (2) A hearing held under this section is not subject to § 10-216 of the State Government Article.
 (d) The Commissioner may delegate to the Deputy Commissioner, an associate deputy commissioner, an associate commissioner, or one other Administration employee who is designated by the Commissioner and admitted to the practice of

law in the State the responsibility for holding a hearing under this section or § 4-114 of this article.

**Maryland Code Ann., Ins. § 2-212(a).**

(a)(1) Except as provided in paragraph (2) of this subsection, a demand for a hearing stays an order of the Commissioner pending the hearing and an order resulting from it if the Commissioner receives the demand:

> (i)  before the effective date of the order; or

> (ii)  within 10 days after the order is served

**Maryland Code Ann., Ins. § 2-213.**

(a)(1) Except as otherwise provided in this subsection, all hearings shall be open to the public in accordance with § 8-505 of the State Government Article.

(2) A hearing held by the Commissioner that relates to a filing under Title 11 of this article is not required to be open to the public.

(3) A hearing held by the Commissioner to determine whether an insurer is being operated in a hazardous manner that could result in its impairment is not required to be open to the public if:

(i) the insurer requests that the hearing not be a public hearing; and

(ii) the Commissioner determines that it is not in the interest of the public to hold a public hearing.

(4) A hearing held by the Commissioner to evaluate the financial condition of an insurer under the risk based capital standards set out in Title 4, Subtitle 3 of this article is not required to be open to the public.

(5) A hearing shall be considered open to the public if a member of the public may observe the hearing virtually through an electronic media platform.

(b)(1) The Commissioner shall allow any party to a hearing to:

(i) subject to paragraph (2) of this subsection, appear in person;

(ii) be represented:

1. by counsel; or

2. in the case of an insurer, by a designee of the insurer who:

A. is employed by the insurer in claims, underwriting, or as otherwise provided by the Commissioner; and

B. has been given the authority by the insurer to resolve all issues involved in the hearing;

(iii) be present while evidence is given;

(iv) have a reasonable opportunity to inspect all documentary evidence and to examine witnesses; and

(v) present evidence.

(2)(i) Subject to subparagraph (ii) of this paragraph, the Commissioner may direct that a hearing be held virtually.

(ii) The Commissioner may not require a party to participate virtually in a hearing if the party demonstrates that it is unable to exercise any of the rights under paragraph (1)(ii) through (v) of this subsection by appearing virtually.

(iii) The Commissioner shall make available to the parties to a virtual hearing a space within the office of the Maryland Insurance Administration with access to the equipment necessary to allow the parties to participate in the virtual hearing.

(3) On request of a party, the Commissioner shall issue subpoenas to compel attendance of witnesses or production of evidence on behalf of the party.

(c) The Commissioner shall allow any person that was not an original party to a hearing to become a party by intervention if:

(1) the intervention is timely; and

(2) the financial interests of the person will be directly and immediately affected by an order of the Commissioner resulting from the hearing.

(d) Formal rules of pleading or evidence need not be observed at a hearing.

(e)(1) On timely written request by a party to a hearing, the Commissioner shall have a full stenographic record of the proceedings made by a competent reporter at the expense of that party.

(2) If the stenographic record is transcribed, a copy shall be given on request to any other party to the hearing at the expense of that party.

(3) If the stenographic record is not made or transcribed, the Commissioner shall prepare an adequate record of the evidence and proceedings.


**Maryland Code Ann., Ins. § 2-215.**

(a) An appeal under this subtitle may be taken only from:

(1) an order resulting from a hearing;

(2) a refusal by the Commissioner to grant a hearing; or

(3) a decision issued under § 15-10A-04 of this article.

(b) An appeal under this subtitle may be taken by:

(1) a party to the hearing;

(2) an aggrieved person whose financial interests are directly affected by the order resulting from a hearing or refusal to grant a hearing; or

(3) a party to the decision issued under § 15-10A-04 of this article.

(c)(1) Subject to paragraph (2) of this subsection, an appeal under this subtitle shall be taken:

(i) to the Circuit Court for Baltimore City; or

(ii) if a party to an appeal is an individual, to the circuit court of the county where the individual resides.

(2) If the appeal is from the suspension or revocation of a certificate of authority of a domestic insurer or license of an insurance producer, adviser, or public adjuster, an appeal may be taken to the circuit court`` of the county where:

(i) the domestic insurer has its principal place of business; or

(ii) the licensee or certificate holder resides.

(d) To take an appeal, a person shall file a petition for judicial review with the appropriate circuit court within 30 days after:

(1) the order resulting from the hearing was served on the persons entitled to receive it;

(2) the order of the Commissioner denying rehearing or reargument was served on the persons entitled to receive it;

(3) the refusal of the Commissioner to grant a hearing; or

(4) the decision issued under § 15-10A-04 of this article was served on the persons entitled to receive it.

(e)(1) An appeal under this subtitle shall be captioned in accordance with the Maryland Rules.

(2) On application to the court, any person may be added as a party, as the court directs, if:

(i) the financial interests of the person are or may be directly affected by the matter on appeal; or

(ii) the person may be aggrieved by the matter on appeal.

(f) When a petition for judicial review is filed with the appropriate court, the court has jurisdiction over the case and shall determine whether the filing operates as a stay of the order or action from which the appeal is taken.

(g)(1) In an appeal of an order resulting from a hearing, after receiving a copy of the petition for judicial review and within the time specified in the Maryland Rules, the Commissioner shall file in the court in which the appeal is pending:

> (i) a copy of the order of the Commissioner from which the appeal is taken;
> (ii) a complete transcript, certified by the Commissioner, of the record on which the order was issued; and
>
> (iii) all exhibits and documentary evidence introduced at the hearing.

(2) In an appeal of a refusal by the Commissioner to grant a hearing, within the time specified in the Maryland Rules, the Commissioner shall file in the court in which the appeal is pending certified copies of all documents on file with the Commissioner that directly relate to the matter on appeal.

(3) In an appeal of a decision issued under § 15-10A-04 of this article, after receiving a copy of the petition for judicial review and within the time specified in the Maryland Rules, the Commissioner shall file in the court in which the appeal is pending:

> (i) a copy of the decision of the Commissioner from which the appeal is taken;
>
> (ii) a copy of the report of the independent review organization or medical expert; and
>
> (iii) all documentary evidence provided to the Commissioner and the independent review organization or medical expert that directly relates to the matter on appeal.

(h) The court to which an appeal is taken may:

> (1) affirm the decision of the Commissioner;
>
> (2) remand the case for further proceedings; or
>
> (3) reverse or modify the decision of the Commissioner if substantial rights of the petitioners may have been prejudiced because administrative findings,

inferences, conclusions, or decisions:

> (i) violate constitutional provisions;

> (ii) exceed the statutory authority or jurisdiction of the Commissioner;
> (iii) are made by unlawful procedure;

> (iv) are affected by other error of law;

> (v) are unsupported by competent, material, and substantial evidence in view of the entire record, as submitted; or

> (vi) are arbitrary or capricious.

(i) Costs of an appeal shall be awarded as in civil actions.
(j)(1) Any party, including the Commissioner, may appeal from the judgment of the circuit court to the Court of Special Appeals as in other civil cases.

(2) The judgment of the circuit court may be stayed only by order of court on the giving of any security that the court considers proper.

## Maryland Code Ann., Ins. § 27-503.

(a) An insurer may not cancel a written agreement with an insurance producer about insurance or refuse to accept insurance business from the insurance producer unless the insurer complies with this section.

(b)(1) This subsection does not apply to:
> (i) policies of life insurance, health insurance, surety insurance, wet marine and transportation insurance, and title insurance; or
> (ii) insurance producers or policies of a company or group of companies represented by insurance producers who by contractual agreement represent only that company or group of companies if:
>> 1. the business is owned by the company or group of companies; and
>> 2. the cancellation of any contractual agreement does not result in the cancellation or refusal to renew any policies.

(2) If an insurer intends to cancel a written agreement with an insurance producer or intends to refuse a class of renewal business from an insurance producer, the insurer shall give the insurance producer at least 90 days' written notice.

(3) Notwithstanding any provision of the agreement to the contrary, the insurer shall continue for at least 2 years after termination of the agency agreement to renew through the insurance producer any of the policies that have not been

replaced with other insurers as expirations occur.

(c) An insurer may not cancel or refuse to renew a policy of the insured because of the termination of the insurance producer's contract.

(d) Notwithstanding any other provision of this section, an insurer may not cancel or amend a written agreement with an insurance producer or refuse to accept business from the insurance producer if the cancellation, amendment, or refusal is arbitrary, capricious, unfair, or discriminatory or is based wholly or partly on the race, creed, color, sex, religion, national origin, or place of residency of the insurance producer or the applicants or policyholders of the insurance producer.

(e) If an insurer or insurance producer that accepts business from an insurance producer acting on behalf of an insured or prospective insured rejects the business of an insurance producer acting on behalf of an insured or prospective insured, the insurer or insurance producer shall give to the Commissioner and the insurance producer acting on behalf of an insured or prospective insured, on request of that insurance producer, the reasons for the rejection in writing.

(f) An insurer may not cancel or amend a written agreement with an insurance producer about property insurance or casualty insurance because of an adverse loss ratio experience on the insurance producer's book of business if:

 (1) the insurer required the insurance producer to submit the application for underwriting approval, all material information on the application was completed, and the insurance producer did not omit or alter any information provided by the applicant; or

 (2) the insurer accepted, without prior approval, policies issued by the insurance producer, if all material information on the application for the policy or on the insurer's copy of any policy issued by the insurance producer was completed and the insurance producer did not omit or alter any information provided by the applicant.


**Maryland Code Ann. State Gov't § 10-213.**

(a)(1) Each party in a contested case shall offer all of the evidence that the party wishes to have made part of the record.

 (2) If the agency has any evidence that the agency wishes to use in adjudicating the contested case, the agency shall make the evidence part of the record.

(b) The presiding officer may admit probative evidence that reasonable and prudent individuals commonly accept in the conduct of their affairs and give probative effect to that evidence.

(c) Evidence may not be excluded solely on the basis that it is hearsay.

(d) The presiding officer may exclude evidence that is:
     (1) incompetent;
     (2) irrelevant;
     (3) immaterial; or
     (4) unduly repetitious.
(e) The presiding officer shall apply a privilege that law recognizes.
(f) On a genuine issue in a contested case, each party is entitled to:
     (1) call witnesses;
     (2) offer evidence, including rebuttal evidence;
     (3) cross-examine any witness that another party or the agency calls; and
     (4) present summation and argument.
(g) The presiding officer may receive documentary evidence:
     (1) in the form of copies or excerpts; or
     (2) by incorporation by reference.
(h)(1) The agency or the Office may take official notice of a fact that is:
     (i) judicially noticeable; or
     (ii) general, technical, or scientific and within the specialized knowledge of the agency.
(2) Before taking official notice of a fact, the presiding officer:
     (i) before or during the hearing, by reference in a preliminary report, or otherwise, shall notify each party; and
     (ii) shall give each party an opportunity to contest the fact.
     (i)    The agency or the Office may use its experience, technical competence, and specialized knowledge in the evaluation of evidence.

**Maryland Code Ann. State Gov't § 10-219(a)**
(a)(1) Except as provided in paragraph (2) of this subsection, a presiding officer may not communicate ex parte directly or indirectly regarding the merits of any issue in the case, while the case is pending with:
     (i) any party to the case or the party's representative or attorney; or
     (ii) any person who presided at a previous stage of the case.
(2)  An agency head, board, or commission presiding over a contested case may communicate with mnembers of an advisory staff of, or any counsel for, the agency, board or commission who otherwise does not participate in the contested case.

**COMAR 31.02.01.02 Definitions**
A. In this chapter, the following terms have the meanings indicated.
B. Terms Defined.

(1) "Administration" means the Maryland Insurance Administration.

(2) "Administrative complaint" means a document that:

(a) Is received by the Commissioner from any person; and

(b) Alleges a violation of:

(i) A law or regulation enforced by the Commissioner; or

(ii) An order issued by the Commissioner.

(3) Contested Case.

(a) "Contested case" has the meaning stated in State Government Article, §10-202(d), Annotated Code of Maryland.

(b) "Contested case" includes a proceeding:

(i) Arising out of a determination made by the Commissioner;

(ii) Arising out of a charging document, order, or notice issued by the Commissioner;

(iii) Regarding a license, certificate, registration, or special permit;

(iv) On a proposed examination report; or

(v) Arising out of any other act of, threatened act of, or failure to act by the Commissioner that aggrieves a person.

(c) "Contested case" does not include:

(i) A hearing on the approval or disapproval of a rate filing or a form filing; or

(ii) Any other quasi-legislative hearing.

(4) Determination.

(a) "Determination" means a decision by the Commissioner that requires the Commissioner to provide the opportunity for a hearing to a person aggrieved by the decision under Insurance Article, §2-210, Annotated Code of Maryland.

(b) "Determination" includes:

(i) A decision as to whether a person against whom an administrative complaint has been received violated a law, regulation, or order; and

(ii) An order issued under Insurance Article, §2-204, Annotated Code of Maryland.

(5) Examination Report.

(a) "Examination report" means a report of the examination of:

(i) An authorized insurer, management company of an authorized insurer, subsidiary owned or controlled by an authorized insurer, rating organization, or authorized health maintenance organization that is subject to examination under Insurance Article, §2-205, Annotated Code of Maryland;

(ii) An insurance producer, surplus lines broker, general agent, adjuster, public adjuster, adviser, or other person that is subject to examination under Insurance Article, §2-206, Annotated Code of Maryland;

(iii) An accredited reinsurer that is subject to examination under Insurance Article, Title 5, Subtitle 9, Annotated Code of Maryland;

(iv) A third party administrator that is subject to examination under Insurance Article, §8-319, Annotated Code of Maryland;

(v) A fraternal benefit society that is subject to examination under Insurance Article §8-461 or 8-462, Annotated Code of Maryland;

(vi) An accepted fronting reinsurer that is subject to examination under Insurance Article, §13-116, Annotated Code of Maryland;

(vii) A nonprofit health service plan that is subject to examination under Insurance Article, §14-125, Annotated Code of Maryland;

(viii) A dental plan organization that is subject to examination under Insurance Article, §14-411, Annotated Code of Maryland;

(ix) A private review agent that is subject to examination under Insurance Article, §15-10B-19, Annotated Code of Maryland;

(x) A premium finance company that is subject to examination under Insurance Article, §23-103, Annotated Code of Maryland;

(xi) A managed care organization that is subject to examination under Health-General Article, §15-102.3, Annotated Code of Maryland;

(xii) A provider-sponsored organization that is subject to examination under Health-General Article, Title 19, Subtitle 7A, Annotated Code of Maryland;

(xiii) The Chesapeake Employers' Insurance Company, which is subject to examination under Insurance Article, §24-304(e)(1), Annotated Code of Maryland; or

(xiv) Any other person that is subject to examination by the Commissioner under any other provision of law.

(b) "Examination report" includes:

(i) A financial examination report; and

(ii) A market conduct examination report.

(6) "Hearing officer" means:

(a) The Maryland Insurance Commissioner or the Commissioner's authorized designee under Insurance Article, §2-210(d), Annotated Code of Maryland; or

(b) An administrative law judge.

(7) "Licensee" means a person holding a certificate of authority, license, registration, or special permit issued by the Administration or who has other similar authority to operate under the regulatory authority of the Administration.

(8) "Office" means the Office of Administrative Hearings.

(9) "Proposed examination report" means an examination report that:

(a) The Commissioner mails to the person examined:

(i) At the conclusion of an examination; and

(ii) Before filing the examination report; and

(b) Informs the person being examined of the person's right to request a hearing pursuant to Regulation .04C of this chapter.

## COMAR 31.02.01.03 Request for a Hearing – In General

A. Scope. This regulation applies to all requests for a hearing except a request for a hearing on a proposed examination report.

B. A person may request a hearing under Insurance Article, §2-210(a)(2), Annotated Code of Maryland, by submitting a written statement to the Commissioner, signed by the requesting person.

C. Request to be Received Within 30 Days.

(1) The request shall be received by the Commissioner within 30 days of the date of the letter notifying the party of the Commissioner's action, intention to act, or failure to act.

(2) In calculating the 30-day period, the date of the letter notifying the party of the Commissioner's action, intention to act, or failure to act is not included.

(3) The end of a day is considered to be 11:59 p.m. Eastern Time.

(4) The last day of the 30-day period is included unless it is a Saturday, Sunday, legal holiday, or a day that the Administration is closed for a part of the day.

(5) If the last day of the 30-day period is a Saturday, Sunday, legal holiday, or a day that the Administration is closed for a part of the day, the 30-day period runs until the end of the next day which is not a Saturday, Sunday, legal holiday, or a day that the Administration is closed for a part of the day.

(6) Intermediate Saturdays, Sundays, legal holidays, and days that the Administration is closed for a part of the day shall be counted toward the 30-day period.

D. The request shall include the following information:

(1) The action or non-action of the Commissioner causing the person requesting the hearing to be aggrieved;

(2) The facts related to the incident or incidents about which the person requests the Commissioner to act or not to act; and

(3) The ultimate relief requested.

E. Upon receipt of a proper request, the Commissioner shall grant a hearing unless:

(1) In viewing the facts set forth by the person making the request, in the light most favorable to that person, the Commissioner has no authority to take action;

(2) The Commissioner determines that the request is frivolous or made in bad faith;

(3) The request does not contain the information required by these regulations;

(4) The request is untimely; or

(5) At the end of the Commissioner's review, the request is moot.

## COMAR 31.02.01.05-1 Discovery

A. By written request served on other parties and filed with the hearing officer not later than 20 days before the scheduled hearing, a party may require any other party to produce, within 15 days, for inspection or copying, any file, memorandum, correspondence, document, object, or tangible thing:
(1) Relevant to the subject matter of the case; and
(2) Not privileged.
B. Unless provided by agreement of the parties, no other discovery procedure is allowed.
C. Copies.
(1) Copies of requested documents and records shall be made at the expense of the party making the request.
(2) The charge for copies of requested documents and records may be waived by the custodian of the documents in accordance with State Government Article, §10-621(e), Annotated Code of Maryland, or other applicable law.
D. Objection to Production.
(1) A party may object to the production of a file, memorandum, correspondence, document, object, or tangible thing by filing a motion to quash discovery or for other relief.
(2) The hearing officer, for cause shown, may issue any order that justice requires to protect the party from annoyance, embarrassment, oppression, or undue burden or expense.
E. A party who has responded to a request for production and who obtains or discovers, before the hearing, additional files, memoranda, correspondence,

documents, objects, or tangible things that are relevant to the request for production shall supplement the response to the request promptly.

F. As sanction against a party that fails to comply with a request for production, the hearing officer, either on the hearing officer's own motion or by motion of the party requesting the production, may issue an order:

(1) Refusing to allow the party to support or oppose designated claims or defenses;

(2) Prohibiting the party from introducing designated matters into evidence;

(3) Striking any allegations or charges made by the party failing to produce;

(4) Staying further proceedings until the discovery is provided; or

(5) Dismissing the action or any part of it.

## COMAR 31.02.01.07.D

The hearing officer shall conduct the hearing and may allow the case to proceed in a manner necessary to ensure the fair resolution of the issues including, but not limited to, placing reasonable limitations on the number of witnesses a party may call and the exclusion of evidence which is repetitive, irrelevant, immaterial, or otherwise not production the Maryland Rules of Civil Procedure may be used as a guide for resolving procedural issues regarding the conduct of the hearing.

## Fed. R. Civ. P. 78(b)

(a)     Providing for Submission on Briefs.  By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings.

## U.S. District Court (MD) Rule 105.6

Hearings – Counsel may (but need not) file a request for hearing.  Unless otherwise ordered by the Court, however, all motions shall be decided on the memoranda without a hearing.

## Maryland Rule 2-403

(a) Motion. On motion of a party, a person from whom discovery is sought, or a person named or depicted in an item sought to be discovered, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had, (2) that the discovery

not be had until other designated discovery has been completed, a pretrial conference has taken place, or some other event or proceeding has occurred, (3) that the discovery may be had only on specified terms and conditions, including an allocation of the expenses or a designation of the time or place, (4) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery, (5) that certain matters not be inquired into or that the scope of the discovery be limited to certain matters, (6) that discovery be conducted with no one present except persons designated by the court, (7) that a deposition, after being sealed, be opened only by order of the court, (8) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way, (9) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

(b) Order. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery.

**Maryland Rule 16-904 (c)**

(c) Unless a judicial proceeding is not open to the public or the court expressly orders otherwise and except for identifying information shielded pursuant to law, a case record that consists of an exhibit (1) submitted in support of or in opposition to a motion or (2) marked for identification at a trial or hearing or offered in evidence, whether or not admitted, is subject to inspection, notwithstanding that the record otherwise would not be subject to inspection under the Rules in this Chapter.

**Maryland Rule 16-934 (b)(1)(A)**

(b)(1) A party to an action in which a case record is filed, and a person who is subject of or is specifically identified in a case record may file in the action a petition:

> (A) To seal or otherwise limit inspection of a case record filed in that action that is not otherwise shielded from inspection under the Rules in this Chapter or Title 20 or other applicable law; or

**Maryland Rule 20-201.1**

(a) Statement in Submission; Notice Regarding Restricted Information

(1) Each submission filed pursuant to Rule 20-201 that contains restricted information shall state prominently on the first page that it contains restricted information. Except for categories of actions specified in Rule 16-914(a) or in the Policies and Procedures adopted by the State Court Administrator pursuant to Rule 20-103(b), if the submission contains restricted information, it shall be accompanied by a completed Notice Regarding Restricted Information on a form approved by the State Court Administrator. The completed Notice shall be subject to public inspection.

(2) Failure to File Notice Regarding Restricted Information. If the filer fails to file a completed Notice of Restricted Information as required, the clerk shall reject the submission without prejudice to refile the submission accompanied by the Notice. The clerk shall enter on the docket that a submission was received but was rejected for noncompliance with Rule 20-201.1(a).

(b) Submission Not Subject to Public Inspection

If the submission, as a whole, is not subject to public inspection by Rule, other law, or court order, the filer shall cite the grounds for such an assertion in the Notice.

(c) Submission Containing Restricted Information

(1) Requirements

If a filer believes that a submission contains both restricted information that is not subject to public inspection and information that is subject to public inspection, and that the restricted information is necessary to be included in the submission, the filer shall (A) file both an unredacted version of the submission, noting prominently in the title of the version that the version is "unredacted - to be shielded," and a redacted version of the submission that excludes the restricted information, noting prominently in the title of the version that the version is "redacted," and (B) state in the Notice the grounds for the assertion that some information is restricted information and for including the restricted information in the submission.

(2) Failure to File Required Versions

If the filer fails to file both an unredacted and a redacted version of a submission when required under subsection (c)(1) of this Rule, the clerk shall reject the submission without prejudice to refile the submission with both versions included. The clerk shall enter on the docket that a submission was received but was rejected for non-compliance with Rule 20 - 201.1(c).

(d) Request for Court Seal

If the filer desires that a submission that otherwise would be accessible to the public be placed under a court seal, the filer shall (1) state that the submission is to be under seal,

(2) include a file name that includes the word "sealed,"

(3) state clearly the legal basis justifying the sealing of the submission, and

(4) state whether there is already in effect a court order to seal the submission and, if so, identify that order. If there is no such order, the filer shall include a motion and proposed order to seal the submission.

(e) Publication of Form of Notice

The Notice Regarding Restricted Information form approved by the State Court Administrator shall be published on the Judiciary's website and in the MDEC policies and procedures manual.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| ERIE INSURANCE EXCHANGE, *et al.*, | * | |
| | * | |
| *Plaintiff-Appellants*, | * | No. 23-1958 |
| v. | * | |
| | * | |
| THE MARYLAND INSURANCE ADMINISTRATION, *et al.*, | * | |
| | * | |
| *Defendant-Appellees*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I certify that, on this 28th day of November, 2023, the Brief of Appellee was filed electronically and served on the following counsel of record who are registered CM/ECF users:

> Michael S. Bullock, Esq.
> 250 West Pratt Street
> Suite 2000
> Baltimore, Maryland  21201
> msb@shapirosher.com

> Alex J. Brown, Esq.
> 250 West Pratt Street
> Suite 2000
> Baltimore, Maryland  21201
> ajb@shapirosher.com

/s/ J. Van Lear Dorsey
_____
J. Van Lear Dorsey